NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180126-U

NO. 4-18-0126

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 2, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ANTWONE LAMONT CREATER, | ) | No. 17CF970 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, finding the trial court did not abuse its discretion when sentencing defendant within the statutory sentencing range for unlawful delivery of a controlled substance.

¶ 2     In September 2017, the State charged defendant, Antwone L. Creater, with two counts of unlawful delivery of a controlled substance. Count I alleged defendant delivered less than one gram of heroin to a confidential source of the Bloomington Police Department while within 1000 feet of a school, a Class 1 felony. 720 ILCS 570/407(b)(2) (West 2016). Count 2 alleged defendant knowingly and unlawfully delivered to a confidential source of the Bloomington Police Department less than one gram of heroin. 720 ILCS 570/401(d)(i) (West 2016). Count I was dismissed before trial. Count 2 was a Class 2 felony, normally punishable by three to seven years in the penitentiary, with probation available. In defendant's case, it carried a Class X mandatory penitentiary sentence of 6 to 30 years in the Illinois Department of

Corrections (IDOC) based on defendant's prior criminal record. 730 ILCS 5/5-4.5-95 (West 2016). In December 2017, a jury found defendant guilty, and the matter was set for sentencing in January 2018. In December 2017, defense counsel filed a "Motion for Judgment Notwithstanding the Verdict or for a New Trial." In January 2018, the trial court denied defendant's motion and proceeded to sentencing. The trial court sentenced defendant to 15 years in IDOC. Defendant filed a timely motion to reconsider sentence, which was denied. Defendant filed a timely notice of appeal.

¶ 3        On appeal, defendant argues the trial court's sentence was excessive, considering the legislative intent of the Illinois Controlled Substances Act (Act) (720 ILCS 570/100 *et seq.* (2016)) and the nature and circumstances of the offense. We disagree and affirm.

¶ 4                               I. BACKGROUND

¶ 5        In September 2017, the State charged defendant by information with two counts of unlawful delivery of a controlled substance (720 ILCS 570/407(b)(2) (West 2016); 720 ILCS 570/401(d)(i) (West 2016)). Before trial, the State dismissed count I and proceeded solely on count II. Defendant raises no issues regarding the trial, so we will outline the proceedings only to the extent necessary.

¶ 6        Jury trial commenced in December 2017. The State's first witness, Casey Wheeler, testified about her role as a paid confidential source with the Bloomington Police Department and the purchase of heroin from defendant in September 2017. After recounting her past substance abuse struggles and her criminal record, she relayed the details of her interaction with defendant to purchase heroin. She testified defendant, via phone calls and text messages, instructed her to go to several different locations in Bloomington before eventually directing her to a bus stop, where the transaction took place. Defendant's cousin, Dorian Parker, arrived at the

bus stop, and Wheeler and Parker engaged in the drug transaction. She stated she gave Parker $140 of the prerecorded currency provided by the police and Parker gave her one packet of heroin and a methadone bottle. She confirmed defendant arrived at the bus stop after the transaction and she spoke with him. The State introduced text messages between Wheeler and defendant where defendant expressed concern about police watching him and Wheeler "setting him up." The text messages also alluded to defendant sending someone to meet Wheeler. Regarding her pending unrelated felony, she said she was hoping for leniency, but she indicated no promises were made. She testified she decided to become a confidential source because she wanted to stop using drugs and because she "knew that if [defendant] was off the streets I couldn't—I couldn't go there. I couldn't go to him."

¶ 7        Dorian Parker testified that in agreement for his testimony, the State would dismiss two of his non-probationable felony counts arising from this incident and allow him to plead to an amended probationable count. However, there was no agreement as to sentence. Parker said he had been a heroin addict for eight years, and he and his wife came to Bloomington from Harvey, Illinois, to visit his wife's cousin (defendant) over the Labor Day weekend. Parker stated he met up with defendant on September 5, 2017, to deliver drugs for him. Defendant instructed him to deliver an empty methadone bottle and two packets of heroin to Wheeler at a bus stop, and defendant would provide a bag of heroin to Parker as payment in exchange for agreeing to the delivery. Parker testified after Wheeler provided him with $140, he provided her with two bags of heroin. After the drug transaction between Parker and Wheeler, defendant arrived, Parker said, and "not even 30 seconds" later police stopped Parker and defendant as they were walking away from the bus stop. Parker still had the recorded currency from the drug transaction in his pocket at the time of his arrest.

¶ 8          Parker admitted signing an affidavit while housed in the McLean County jail, taking sole responsibility for the drug transaction and exonerating defendant. However, he said the body of the affidavit was not his handwriting, he did not know what it contained, and he signed it because he "felt pressured and *** was still coming off withdrawals from the drugs." He said defendant and his brother (who was also incarcerated in the McLean County jail at the time) pressured him daily to sign it.

¶ 9          The State called several police officers involved in the planning and execution of the controlled drug transaction between Wheeler and defendant. The testimony revealed officers witnessed Wheeler at the bus stop, when an individual (later identified as Parker) sat next to her on the bench. Police witnessed a hand-to-hand transaction as Wheeler put money on the bench, and Parker handed her something while picking up the money. Wheeler and Parker were engaged in conversation when another individual (later identified as defendant) approached the bus stop. Parker and defendant began walking away when other officers arrived and arrested them. Defendant had over $1700 in his pockets along with a cellular phone, which officers confirmed was the phone used to set up the drug transaction with Wheeler. Police also searched Parker, who had $261 on his person, $140 of which was the "buy money" Wheeler used to purchase the heroin.

¶ 10          Todd Walcott, the lead detective on the case, testified about the benefit of using confidential sources in drug cases and explained the details involved in controlled-buy transactions. He described how Wheeler contacted him wanting to work as a confidential source and purchase heroin from defendant. On the day of the incident, he drove her to various locations to meet up with defendant and searched her before and after the drug transaction. After the transaction, he made contact with Wheeler at a nearby restaurant where she informed him the

drug transaction was completed and provided him with a bag of heroin. A recorded interview of defendant was played before the jury where he stated he directed Parker to give Wheeler her empty methadone bottle but he did not direct him to deliver her any drugs. He confirmed his cell phone number was the same one Wheeler used to set up the drug transaction but stated she kept on contacting him to return her methadone bottle. A stipulation was read attesting to the proper foundational requirements for the drugs and testing by an Illinois State Police forensic scientist revealed the tested substance was heroin that weighed 0.1 gram. The State rested its case, defendant elected not to testify, and the defense called no witnesses. The jury found defendant guilty.

¶ 11　　　　In late December 2017, defendant filed a "Motion for Judgment Notwithstanding the Verdict or for a New Trial." Defendant claimed the State failed to prove the elements of the offense beyond a reasonable doubt and the finding of the jury was against the manifest weight of the evidence. In January 2018, the trial court denied the motion and proceeded to sentencing. The State submitted, as a demonstrative exhibit, a list of dates defendant had been in custody since 1997. Defense counsel submitted an acceptance letter defendant received from Midwest Technical Institute and defendant's payroll records from his employment in 2017. Defense counsel called Alexandria Macon, a 17-year-old who stated defendant has been a father figure to her since she was born, taking her to doctor's appointments and helping her with school. When he was released from prison in 2016, she helped him find placement and helped him complete job applications.

¶ 12　　　　During its argument, the State outlined defendant's drug-related convictions starting in 1988. It noted that since 2004, every time defendant was paroled from prison, his parole was violated for another unlawful delivery of a controlled substance charge. Using the

exhibit, the State noted that in the 13 years and 4 months since defendant first went into prison in 2004,

> "he spent nine years and nine months in DOC, and he spent 11 months in county [jail]. *** [W]ithin 13 years since he first stepped into DOC he's only been out for less than two [years], and yet, in this timeframe he was able to pick up six delivery [of controlled substances] charges."

The State argued the substance delivered in this case, heroin, was a highly toxic controlled substance and defendant committed the offense while on parole, both statutory factors a court may consider. See 720 ILCS 570/411(1) (West 2016); 730 ILCS 5/5-5-3.2(a)(12) (West 2016). The State argued a 20-year sentence was necessary to deter defendant and others and appropriate "because the only thing the defendant has learned through his numerous terms in the Department [of Corrections] is just different ways of trying to evade detection." It pointed out, through his six previous controlled substance delivery charges, he violated parole in each instance with a similar charge.

¶ 13    Defense counsel argued the evidence at trial, placing responsibility for the transaction on Parker and asserting he "was the primary drug deliverer and dealer in this case and, by his own testimony, was feeding his own drug habit." Counsel also contended defendant was battling a drug addiction and anxiety disorder, which helped explain why he has been in and out of prison. Defense counsel asked the court to impose a 10-year sentence based on the "very small" quantity of drugs and defendant's limited involvement in "a crime of opportunity." Defendant gave a lengthy allocution professing his innocence, claiming he was used by Wheeler and Parker and the jury's guilty verdict was a "grave mistake."

¶ 14 Before announcing sentence, the trial court stated it considered:

"the evidence at trial, the gravity of the offense, the Presentence

Investigation Report as amended, the financial impact of

incarceration, the exhibits that were admitted at the sentencing

hearing today *** along with the testimony of the witness, the

arguments and recommendations of counsel, the defendant's

statement in allocution. The Court, having further considered the

factors in aggravation and mitigation, the defendant's history,

character and attitude, the youth of the defendant and his potential

for rehabilitation, all sentencing options, and otherwise being fully

advised in the premises ***."

¶ 15 In addressing defendant's claims and his statement of allocution, the trial court noted that even while defendant maintained his innocence, which the court recognized was his right and would not factor into sentencing, the trier of fact did not see it that way.

¶ 16 The trial court expressed reluctance to comment on specific factors in aggravation based on his concern for possible misconstruction by the appellate court of his comments as "double enhancement," and therefore it did not specify such factors, saying instead it "considered all the factors in aggravation and mitigation and that does, among others, take into consideration [defendant's] previous criminal offenses which would be substantial" before sentencing defendant to 15 years in IDOC.

¶ 17 In January 2018, defendant filed a motion to reconsider his sentence, claiming "[t]hat given all the circumstances, the sentence imposed is excessive." In February 2018, the trial court held a hearing on defendant's motion where defendant's counsel indicated, "I'm just

asking the court to reconsider and weigh the evidence that was present at the prior sentencing hearing and at trial." Counsel then provided a brief overview of the trial testimony as well as evidence presented at the sentencing hearing and contained in the presentence investigation report.

¶ 18　　　　The State reiterated its previous argument concerning defendant's criminal record and his failure to successfully complete any term of parole. The trial court again listed the factors it considered when imposing the sentence originally and denied the motion.

¶ 19　　　　This appeal followed.

¶ 20　　　　　　　　　　　　　II. ANALYSIS

¶ 21　　　　On appeal, defendant argues the trial court's sentence was excessive considering the nature and circumstances of the offense and is at odds with the legislative intent and purpose of the Act. For these reasons, defendant urges us to reduce his sentence "to no more than 10 years in prison." The State responds the trial court's 15-year sentence was within the statutory guidelines and there is no evidence in the record the trial court abused its discretion. We agree with the State.

¶ 22　　　　A trial court enjoys broad discretion in imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448, 841 N.E.2d 889, 912 (2005). " 'In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed.' " *People v. Hestand*, 362 Ill. App. 3d 272, 281, 838 N.E.2d 318, 326 (2005) (quoting *People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d 673, 681 (2001)). When mitigating factors are presented to a court, the reviewing court should presume that the trial court considered them. *People v. Pippen*, 324 Ill. App. 3d 649, 653, 756 N.E.2d 474, 478 (2001).

Likewise, when a sentence falls within the statutory range of sentences possible for a particular offense, it is presumed reasonable. *People v. Moore*, 41 Ill. App. 3d 3, 4, 353 N.E.2d 191, 192 (1976).

¶ 23 "Because the trial court is in a better position to observe the witnesses and consider the relevant factors, its sentencing determination is entitled to great deference." *People v. Kenton*, 377 Ill. App. 3d 239, 245, 879 N.E.2d 402, 407 (2007). " 'Absent an abuse of discretion by the trial court, a sentence may not be altered upon review.' " *People v. Hensley*, 354 Ill. App. 3d 224, 234, 819 N.E.2d 1274, 1284 (2004) (quoting *People v. Kennedy*, 336 Ill. App. 3d 425, 433, 782 N.E.2d 864, 871 (2002)). An abuse of discretion will be found "where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000)). Alternatively, an abuse of discretion will not be found unless the court's sentencing decision is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26, 82 N.E.3d 693.

¶ 24 In this case, defendant was convicted of unlawful delivery of a controlled substance, a Class 2 felony, but subject to Class X sentencing (6 to 30 years in IDOC) due to defendant's prior criminal record. 730 ILCS 5/5-4.5-95 (West 2016). As the trial court's 15-year sentence fell within the relevant sentencing range, it is presumed to be proper, and we will not disturb the sentence absent an abuse of discretion. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46, 19 N.E.3d 1070.

¶ 25 Defendant's argument, in part, posits he was indirectly involved in the sale of a small amount of heroin and the sentence of 15 years is excessive because the offense itself was

not serious enough to warrant such a sentence. If we were to consider that in isolation, defendant may have a point. Unfortunately, when exercising its broad discretion at sentencing, the trial court must base a defendant's sentence on other relevant factors besides the instant offense itself. As we have previously stated, "[a]n appropriate sentence must be based upon the particular circumstances of an individual case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for deterrence and punishment." *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37, 99 N.E.3d 571. All of these factors " 'must be equally weighed.' " *Hestand*, 362 Ill. App. 3d at 281 (quoting *Hernandez*, 319 Ill. App. 3d at 529). Therefore, it is incumbent upon the trial court to review all appropriate factors and weigh them accordingly before imposing sentence.

¶ 26        Although the trial court did not make specific findings of what it considered aggravating or mitigating, it was not required to do so. See *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494 ("When imposing a sentence, the trial court must consider statutory factors in mitigation and aggravation, but the court need not recite and assign a value to each factor it has considered."). Besides considering the seriousness of the offense, the trial court stated it considered factors in "aggravation and mitigation, the defendant's history, character and attitude, the youth of the defendant and his potential for rehabilitation, [and] all sentencing options." It is certainly appropriate for the trial court to consider the seriousness of the offense before imposing sentence, but defendant is asking us to reverse a sentence within the statutory guidelines by arguing a lack of seriousness should be given more weight than any of the other factors previously considered by the trial court. We decline to do so.

¶ 27        Defendant folds into his excessive-sentence argument a claim the trial court's 15-year sentence is at odds with the legislative intent and purpose behind the Act. As defendant

- 10 -

indicates, the legislative intent of the Act provides "a wide latitude in sentencing discretion, to enable the sentencing court to order penalties in each case which are appropriate for the purposes of this Act." 720 ILCS 570/100 (West 2016). Defendant lists nine sentencing factors under the Act's sentencing statute, claiming defendant only qualifies under one of them (that heroin is a highly toxic controlled substance.) For this reason, defendant claims the 15-year sentence was excessive. Defendant appears to ignore the fact that section 411 of the Act provides for any one of these factors (they are listed in the disjunctive) to be considered as warranting "the most severe penalties." 720 ILCS 570/411 (West 2016). Further, defendant confuses the sentencing structure of the Act with defendant's circumstances. True, he was subject to a sentence under the Act; however, because of his extensive criminal history, *his* sentence was to be determined pursuant to the habitual criminal statute (730 ILCS 5/5-4.5-95(b) (West 2016)) which, simply by operation of the number, severity, and frequency of his previous convictions, warranted enhancement from a probationable 3 to 7 years for a Class 2 felony, to mandatory Class X sentencing, now with a range of a non-probationable 6 to 30 years. This is due to the fact the conviction in this case was defendant's *seventh* delivery of controlled substances conviction between 2003 and 2018.

¶ 28        Contrary to defendant's claim that a 15-year sentence is at odds with the Act's legislative intent, the Act states in part its purpose is to "penalize most heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society." 720 ILCS 570/100 (West 2016). Defendant is not an occasional petty distributer of controlled substances—it is his profession. The Act's intent was designed to curb defendant, and individuals similarly situated, from delivering dangerous substances that damage "the peace and

welfare of the citizens of Illinois." 720 ILCS 570/411 (West 2016). The evidence produced at trial and sentencing also supports the conclusion the sentence was necessary to deter others, including defendant, from committing the same crime in the future. 730 ILCS 5/5-5-3.2(7) (West 2016). Indeed, defendant was on mandatory supervised release (MSR) at the time he committed this felony and appears to have been on MSR or parole each time he reoffended. See 730 ILCS 5/5-5-3.2(12) (West 2016). The court mentioned defendant's extensive criminal history—a statutory aggravating factor the court can consider at sentencing. 730 ILCS 5/5-5-3.2 (3) (West 2016).

¶ 29    Defendant's criminal history dates back to the late 1980s and covers four counties. He has 7 prior felonies, 6 prior misdemeanors, and 21 related traffic offenses. At the time he committed this offense, he was out on parole after serving a 10-year sentence for committing the same offense—unlawful delivery of a controlled substance. Before committing this offense, he had approximately 10 convictions related to drug offenses, 6 of which involved delivery of controlled substances. He has received a total of six separate sentences to IDOC and has been returned on a parole violation every time. As the State pointed out at sentencing, during the 13 years after his first sentence to IDOC, defendant had been out of prison for less than 2 years. Within that two-year period, he was convicted of six felonies involving unlawful delivery of controlled substances.

¶ 30    Defendant has failed to show how the trial court erred by imposing a sentence in the mid-range of what was statutorily permissible and only five years more than defendant's own recommendation while at the same time five years less than the recommendation of the State. The record reveals the trial court considered all appropriate evidence before imposing a sentence, all factors in aggravation and mitigation, and "defendant's history, character and attitude, the

- 12 -

youth of the defendant and his potential for rehabilitation." Defendant's 15-year sentence amounted to half of the maximum possible for committing the same offense for the seventh time. We find this sentence was not greatly at variance with the spirit of the law or manifestly disproportionate to the nature of defendant's crimes in light of both aggravating and mitigating factors. Accordingly, we conclude defendant's sentence was not excessive and the trial court did not abuse its discretion.

¶ 31                                    III. CONCLUSION

¶ 32          For the reasons stated, we affirm the trial court's judgment.

¶ 33          Affirmed.