NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240770-U

NO. 4-24-0770

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 3, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ANTWONE LAMONT CREATER, | ) | No. 17CF970 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding defendant's amended successive postconviction petition, advancing an actual innocence claim based on the affidavit of a key witness at trial, was properly dismissed at the second stage because the affidavit attached to the petition was not of such a conclusive character that it would probably change the result at retrial.

¶ 2    Defendant, Antwone Lamont Creater, appeals the second stage dismissal of his amended successive postconviction petition, wherein he claimed, based on an affidavit prepared by Kacey Wheeler, a key witness, he was actually innocent of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2016)). Defendant argues the dismissal was improper, since Wheeler's new, material, and noncumulative affidavit would probably result in a different verdict on retrial. We disagree and affirm.

¶ 3                                 I. BACKGROUND

¶ 4    The facts of this case are fully set forth in *People v. Creater*, 2020 IL App (4th)

180126-U, and *People v. Creater*, 2022 IL App (4th) 200431-U. Thus, we include only those facts necessary to resolve this appeal.

¶ 5        At defendant's jury trial, Wheeler testified she suffered from drug addiction, had a criminal record, and became a confidential informant to receive leniency from the State for a pending felony driving offense and get defendant, her supplier, off the streets. On September 5, 2017, Wheeler used her cell phone to call defendant and arrange to buy heroin from him. The police were not privy to this conversation. Thereafter, the police searched Wheeler and gave her $160 in prerecorded buy money.

¶ 6        Wheeler then texted defendant, "Oh and I need my methadone bottle or I'm going to get in trouble [and] they won't give me my methadone today." Defendant instructed Wheeler to go to several different locations before directing her to wait at a bus stop near his home. Wheeler, who was being driven to the different locations by the police, stated defendant sent her to different locations because "he was seeing police and *** he was scared." Defendant texted, "Man I hope you not saying [*sic*] me up." Defendant immediately corrected his text to "Setting me up."

¶ 7        Thereafter, defendant texted Wheeler ,"C. He gonna see you up there [at the bus stop] so wait for him to get up there to you." Defendant texted Wheeler, "Ok. He know you," and "Give him my dust." Wheeler then texted defendant, "Your cousin just drove past me."

¶ 8        Wheeler testified Dorian Parker, whose wife was defendant's cousin, came back to the bus stop, she gave Parker $140 in prerecorded buy money, and Parker gave her one packet of heroin and her methadone bottle. Defendant then arrived at the bus stop. He asked Wheeler, " 'This is it; isn't it?' " Wheeler stated, "[Defendant] was laughing about, you know, that [she] was setting him up."

¶ 9 Parker, who agreed to testify in return for the dismissal of two nonprobationable felonies arising from this incident, along with an open plea to an amended probationable count, stated he was addicted to heroin. On September 5, 2017, defendant gave Parker two packets of heroin and told him to give them and an empty methadone bottle to Wheeler at the bus stop. In return, defendant said he would give Parker a bag of heroin. Parker completed the transaction as requested. Defendant then arrived at the bus stop. Parker stated, "I think [defendant] asked [Wheeler] if she set him up or something to that nature." Within 30 seconds of Parker and defendant leaving the bus stop, they were stopped by the police.

¶ 10 During his testimony, Parker admitted signing an affidavit exonerating defendant. The affidavit, prepared 11 days after defendant was charged, was notarized and indicated the statements in it were "true[ and] correct" and made "under penalties of perjury." It said defendant had no knowledge of or involvement with the drug transaction and Parker implicated defendant because Parker was addicted to heroin and did not want to be arrested, as he would be forced to detox in jail. The affidavit indicated Parker "mentioned [defendant] because [he] thought [he] could bargain someone else off for [his] freedom." The affidavit said Parker was "beyond [his] withdrawals[ ] and completely competent and sober" and could not "let another person go down for something [he] did."

¶ 11 Although Parker admitted signing the affidavit, he claimed he did not write the affidavit, never read it, and did not "really" know its contents. He said he signed it because he was feeling ill from detoxing and defendant and defendant's brother, who were also in jail with him, pressured him to do so.

¶ 12 Police officers testified to having observed Parker and Wheeler sitting next to each other on a bench at the bus stop. They saw Wheeler lay money on the bench, Parker hand

Wheeler something, and Parker pick up the money. The police then saw defendant approach the bus stop and leave with Parker.

¶ 13    When Parker and defendant were stopped, the police found $1,772 on defendant as well as the cell phone he used to contact Wheeler. The police also found $140 in prerecorded buy money and an additional $121 on Parker. The police received from Wheeler only one packet of heroin. They questioned her truthfulness after the drug transaction because she kept $20 of the prerecorded buy money and turned over only one packet of heroin. The packet recovered was kept in a proper chain of custody, and subsequent testing revealed the substance weighed 0.1 grams and tested positive for heroin.

¶ 14    During a postarrest interview, defendant told the police Wheeler contacted him only about her methadone bottle, which he directed Parker to give her. He denied ever instructing Parker to deliver drugs to Wheeler.

¶ 15    The jury found defendant guilty of unlawful delivery of a controlled substance. The trial court sentenced defendant as a Class X offender to 15 years in prison. Defendant filed a motion to reconsider his sentence, which the court denied. Thereafter, defendant appealed, arguing only that his sentence was excessive. This court affirmed. *Creater*, 2020 IL App (4th) 180126-U, ¶ 30.

¶ 16    While defendant's direct appeal was pending, he petitioned *pro se* for postconviction relief. See 725 ILCS 122-1 *et seq.* (West 2020). In his lengthy petition, he raised, among other issues, an actual innocence claim. As the trial court observed, "Defendant appear[ed] to contend that had [Jonathon] Jamerson testified he wrote the *** affidavit for *** Parker, which was then signed by *** Parker in the presence of a notary public, that such testimony would establish [defendant's] innocence." The court disagreed with defendant,

finding, "At best, any such testimony by *** Jamerson would merely impeach the trial testimony of *** Parker." The court summarily dismissed the petition, defendant appealed, and the Office of the State Appellate Defender (OSAD) moved to withdraw. We granted OSAD's motion to withdraw and affirmed the summary dismissal of defendant's *pro se* postconviction petition. *Creater*, 2022 IL App (4th) 200431-U, ¶ 77.

¶ 17    On April 22, 2022, defendant moved *pro se* for leave to file a successive postconviction petition. In his petition he raised, among other issues, another actual innocence claim. Defendant asserted Wheeler testified falsely about the incident at his jury trial. Attached to defendant's motion was Wheeler's affidavit, which provided:

"I remember convincing [defendant] to meet me and bring me the lid to my methadone container. I was really trying to put him in a position to get caught handing me drugs. [Defendant's] only intention was to bring me my methadone cap.

I was an addict and at the time I didn't want to go back to prison on some of my own charges. So instead, I did my best to not only implicate [defendant], but I also feel that I conived [*sic*] to involve and encourage [defendant] to feel sorry for me being sick from withdrawls [*sic*] and I tried to convince him to hand me something that would get him arrested.

In retrospect, and mostly, now that I'm clean and in my right mind, I find it hard to live with myself, knowing that [defendant] is still in prison all because I couldn't handle my own and I conived [*sic*] to put the pressure on him. I feel terrible and I wish I could take it back.

I believe [defendant] deserves to be outside of prison, pursing [*sic*] a

career and loving on his family. I feel terrible and I hope that I can somehow help

him, since I'm the one who conived [*sic*] to put him there.

   I respectfully apologize to [defendant] for my unacceptable and addicted

behavior and choices and on all others whom I negatively affected or

inconvenienced."

Wheeler signed the affidavit "under penalties of perjury" before a notary public on April 8, 2022.

¶ 18   On February 17, 2023, the trial court granted defendant's motion for leave to file a successive postconviction petition, advanced the case to the second stage of postconviction proceedings, and appointed counsel to represent defendant.

¶ 19   In January 2024, appointed counsel filed an amended postconviction petition, raising an actual innocence claim. The petition alleged, based on Wheeler's affidavit, Wheeler convinced defendant to bring her the methadone bottle because she wanted to put defendant in a position where he would get caught delivering drugs. The petition alleged this actual innocence claim was viable because Wheeler's affidavit was (1) new, *i.e.*, prepared 14 days before defendant moved to file a successive postconviction petition; (2) material and noncumulative, *i.e.*, relevant and probative of defendant's innocence; and (3) of a conclusive character, *i.e.*, without Wheeler's testimony, the only evidence before the jury was Parker's suspect testimony concerning the hand-to-hand drug transaction.

¶ 20   The State moved to dismiss the amended petition. It argued Wheeler's affidavit did not support an actual innocence claim because it did not exonerate or discredit the evidence presented at trial but, rather, merely impeached Wheeler's trial testimony.

¶ 21   In May 2024, the trial court granted the State's motion to dismiss. The court found Wheeler's affidavit was not of such a conclusive nature that it would probably change the

outcome on retrial. Specifically, the court determined her affidavit did not contain any new facts to contradict her testimony or the testimony of any other witnesses. Accepting Wheeler's affidavit as true, the court found it constituted an "apology letter" to defendant that, at best, would impeach her trial testimony.

¶ 22　　　　This appeal followed.

¶ 23　　　　　　　　　　　　II. ANALYSIS

¶ 24　　　　Defendant argues the dismissal of his amended successive postconviction petition was improper. He contends his amended successive petition made a substantial showing of actual innocence based on Wheeler's newly obtained affidavit. According to defendant, Wheeler's affidavit contradicted her trial testimony such that a retrial in light of the affidavit would result in a different verdict.

¶ 25　　　　The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a three-stage process for the adjudication of a postconviction petition. *People v. Johnson*, 2017 IL 120310, ¶ 14. When a motion for leave to file a successive petition is filed, the petition must satisfy an initial threshold. See *People v. Lee*, 2016 IL App (1st) 152425, ¶ 42. Specifically, "the trial court must first determine whether the petition (1) states a colorable claim of actual innocence [citation] or (2) establishes cause and prejudice." *Id.* "This standard is higher than the normal first-stage 'frivolous or patently without merit' standard applied to initial petitions." *Id.* (quoting *People v. Edwards*, 2012 IL 111711, ¶¶ 25-29).

¶ 26　　　　Here, the trial court found defendant's petition stated a colorable claim of actual innocence, and it advanced defendant's petition to the second stage of postconviction proceedings. When a defendant's petition is advanced to the second stage, all the defendant's allegations not affirmatively rebutted by the record are taken as true, and the question is whether

the allegations show a substantial constitutional violation. *Id.* ¶ 46. " '[T]he "substantial showing" of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle [the defendant] to relief.' " (Emphasis in original.) *Id.* (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35). "The substantial showing required to avoid dismissal at the second stage is greater than the standard that must be satisfied to obtain leave to file a successive petition." *People v. Robinson*, 2020 IL 123849, ¶ 43.

¶ 27        Here, the trial court found defendant's petition failed to make a substantial showing of a constitutional violation, and, thus, it dismissed his petition at the second stage. We review this dismissal *de novo*. *Lee*, 2016 IL App (1st) 152425, ¶ 50.

¶ 28        Defendant contends his amended successive petition should not have been dismissed because, with Wheeler's affidavit, he made a substantial showing of actual innocence, a due process claim for purposes of these postconviction proceedings. See *People v. Washington*, 171 Ill. 2d 475, 487 (1996) ("[T]he use of false testimony underlying a conviction is a due process violation."). To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such a conclusive character it would probably change the result on retrial. *Edwards*, 2012 IL 111711, ¶ 32. "Newly discovered evidence" is evidence discovered after trial that could not have been discovered earlier through the exercise of due diligence. *Robinson*, 2020 IL 123849, ¶ 47. Evidence is "material" if it is relevant and probative to the defendant's innocence, and it is "noncumulative" when it adds to what the jury heard. *Id.*

¶ 29        "The conclusive character of the new evidence is the most important element of

an actual innocence claim." *Id.* Evidence is of a conclusive character if it would probably change the result on retrial. *Id.* The evidence need not be entirely dispositive to likely alter the result on retrial. *Id.* ¶ 48. Probability, rather than certainty, is key to whether the fact finder would reach a different result after considering the new evidence within the context of the other evidence presented at trial. *Id.* Ultimately, when the relief sought in a postconviction petition is based on newly discovered evidence showing actual innocence, we consider whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines our confidence in the defendant's guilt. *Id.* ¶ 47. Put another way, the new evidence must establish "it is 'probable' or 'more likely than not' a jury would acquit [the] defendant after a new trial where the new evidence in th[e] case is considered alongside the original trial evidence." *People v. Whalen*, 2020 IL App (4th) 190171, ¶ 103.

¶ 30        Here, even though Wheeler's affidavit may be new, material, and noncumulative, we cannot conclude it is of a conclusive character, *i.e.*, that her affidavit would probably result in a different verdict on retrial. In her affidavit, Wheeler never exonerates defendant. She does not expressly recant her previous testimony, instead merely providing an alternate explanation for how the transaction was initiated and her motivation for targeting defendant. She never attests she lied at trial or defendant was not involved with Parker giving her heroin in return for $140. Rather, she states she feels bad because she wanted defendant to be caught giving her drugs or "something," presumably heroin to help her with her withdrawal, that would justify the police arresting him. Specifically, she expressly states she was hoping to "involve and encourage [defendant] to feel sorry for me being sick from withdrawls [*sic*] and I tried to convince him to hand me something that would get him arrested." Apologizing to defendant for having him deliver heroin to her would not change the result on retrial, as the evidence would still indicate

defendant was involved in delivering heroin to Wheeler. The only difference added with Wheeler's affidavit is that Wheeler is now remorseful for her actions. At best, this would discredit, contradict, or impeach Wheeler's testimony, which is not enough to make a substantial showing of actual innocence. See *People v. Smith*, 177 Ill. 2d 53, 83 (1997) (" 'Newly discovered evidence, the effect of which is to discredit, contradict and impeach a witness, does not afford a basis for the granting of a new trial.' ") (quoting *People v. Holtzman*, 1 Ill. 2d 562, 568 (1953)).

¶ 31    Moreover, even if Wheeler's affidavit could do more than discredit her on retrial, other evidence, aside from Wheeler's testimony, implicates defendant in delivering the drugs. Text messages between defendant and Wheeler show Wheeler had previously asked defendant to bring her something when she asked him to *also* bring her methadone bottle to her. Although "something" was never specified in the text messages, the record suggests the item was illegal and valuable. Defendant took great pains to avoid arrest when transferring the "something" to Wheeler, continually changing where they were to meet for the delivery because he was seeing police. He even commented about his concerns Wheeler was trying to set him up. In fact, defendant was so concerned Wheeler was setting him up that he eventually had Parker deliver the item for him. The record is also clear defendant expected to be paid. That is, defendant reminded Wheeler to give Parker defendant's "dust," which is a slang term for money. See *Dust*, Green's Dictionary of Slang, https://greensdictofslang.com/entry/sknnwka (last visited January 28, 2025); *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n.9 (indicating the appellate court may take judicial notice of information on a public website even though the information was not in the record on appeal); see also *People v. Gorman*, 394 Ill. App. 3d 977, 984 (2009) ("Although the word 'stolen' was not used during the entirety of th[e] transaction [between the

defendant and the police officer], these veiled references to stealing could be inferred *** in the same manner that slang references to stealing have been similarly determined by other jurisdictions."). Added to this evidence was Parker's testimony. Although his credibility may be suspect given his affidavit, his testimony explained and supported the text messages. Parker testified defendant gave him heroin (the something illegal and of value) that he eventually delivered to Wheeler in exchange for $140 (defendant's "dust").

¶ 32   Citing *People v. Williams*, 2020 IL App (1st) 172118, defendant argues Wheeler's affidavit warrants advancing his petition to a third-stage evidentiary hearing because no physical evidence linked defendant to the crime and the evidence against him consisted of only witness testimony. *Williams* is inapposite.

¶ 33   In *Williams*, the defendant was convicted of domestic battery. *Id.* ¶ 23. At the defendant's bench trial, the defendant's wife, Angela Rush, and her two children testified about an incident where the defendant battered Rush. *Id.* ¶¶ 6-12. Their testimony was inconsistent with (1) what Rush, who was the only person the police questioned and did not have any visible injuries, told the police; (2) photographs of Rush's injuries allegedly taken right after the incident; and (3) the defendant's testimony. *Id.* ¶¶ 14, 18-20, 26. After he was sentenced, the defendant filed a posttrial motion, attaching to his motion statements from Rush and her two children indicating (1) the defendant did not batter Rush on the day in question and (2) the photographs admitted at trial were of injuries Rush sustained from a prior incident. *Id.* ¶ 27. The defendant wished to proceed with an evidentiary hearing on the motion, but the trial court refused to let him do so and denied his motion. *Id.* ¶ 29.

¶ 34   On appeal, the defendant argued "the trial court abused its discretion when it denied his motion for a new trial while refusing his request to present newly discovered

evidence." *Id.* ¶ 32. The appellate court held the defendant was entitled to an evidentiary hearing on his posttrial motion because there "was no physical evidence linking defendant to the crime, the evidence against defendant was solely testimonial, and all of the key witnesses *** recanted their trial testimony." *Id.* ¶ 35.

¶ 35    This case is unlike *Williams*. Most importantly, Wheeler, unlike the three witnesses in *Williams*, did not recant. Rather, she, at best, expressed remorse for helping to orchestrate the drug transaction that resulted in defendant's arrest. Further, Parker, the other key trial witness, did not recant. Although he prepared an affidavit exonerating defendant soon after defendant was charged, Parker's trial testimony specifically implicated defendant as the one who provided the heroin Parker delivered to Wheeler in return for $140, which compensated defendant for the heroin. Last, unlike in *Williams*, physical evidence, *i.e.*, the text messages, suggested defendant and Wheeler alone arranged the drug transaction.

¶ 36    Based on the foregoing, we must conclude defendant failed to make a substantial showing of his actual innocence. Accordingly, we find the second stage dismissal of defendant's amended successive postconviction petition was proper.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we affirm the trial court's judgment.

¶ 39    Affirmed.