(No. 51420

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. CRAWFORD DISTRIBUTING COMPANY, INC.,
*et al.* (Maurer Distributing Co., Appellant).

*Opinion filed December 3, 1979.*

Marshall A. Susler, Robert D. Owen and Linda M. Castleman, of Owen, Roberts, Susler & Murphy, of Decatur, for appellant.

William J. Scott, Attorney General, of Springfield (John E. Noel and Thomas S. Malciauskas, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

Following a jury trial, the defendant, Maurer Distributing Company, a corporation, was convicted in the circuit court of Macon County of engaging in a conspiracy in restraint of trade, in violation of section 3(1)(a) of the Illinois Antitrust Act (Ill. Rev. Stat. 1971, ch. 38, par. 60—3(1)(a)) and fined $10,000. The appellate court affirmed the conviction with one justice dissenting (65 Ill. App. 3d 790), but granted a certificate of importance, pursuant to Supreme Court Rule 316 (58 Ill. 2d R. 316).

Before considering the merits of the case, a procedural matter warrants mentioning. The primary question raised in the defendant's application for a certificate of impor-

tance has been rendered moot by our decision in *People v. Fife* (1979), 76 Ill. 2d 418; however, under Rule 316, the whole case comes before us and not just a particular issue. (*Nowicki v. Union Starch & Refining Co.* (1973), 54 Ill. 2d 93.) Thus, we are not confined to answer only the question which the defendant sought to have certified.

The defendant contends the trial court erred in permitting the State to call Michael Maurer as a witness in front of the jury when the State was informed that Maurer would not testify but would plead his fifth amendment privilege. Michael Maurer was the president and sole shareholder of defendant Maurer Distributing Company. Prior to calling him as a witness, the State made a motion, out of the presence of the jury, to grant him immunity pursuant to section 106—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 106—1). That section provides for a grant of full transactional immunity to the recipient. (*People ex rel. Cruz v. Fitzgerald* (1977), 66 Ill. 2d 546.) Maurer objected to the motion and argued that the Attorney General had previously promised immunity not only to him personally, but also to his defendant corporation, and he refused to testify unless this immunity was given. Maurer had previously given a statement to the State in response to a subpoena pursuant to section 7.2 of the Illinois Antitrust Act (Ill. Rev. Stat. 1971, ch. 38, par. 60—7.2) during the State's investigative procedure, and he had testified before the grand jury. The State argued that it could not grant any broader immunity than a transactional immunity. The court granted the State's motion. The State then requested that Maurer be called as a witness. However, since Maurer continued to argue that he would not testify but rather plead the fifth amendment, the court determined to have the witness called out of the presence of the jury so that the jury would not be prejudiced. The State called Maurer and he stated his name and address, but when asked where he worked, he claimed his privilege and read from a prepared statement on why he refused to testify.

The court then conducted an examination outside the presence of the jury to determine whether immunity had been granted the Maurer Distributing Company. The court ruled that immunity had never been granted to the corporation, but it made no findings or conclusions with regard to the dimensions of the immunity granted Mr. Maurer. The State then asked the court to call Maurer as the court's witness, but the motion was denied. The State then requested that Maurer be called to testify in front of the jury, and the defense counsel objected on the grounds that Maurer had indicated he would plead the fifth amendment and inferences from this procedure would prejudice their client. The court granted the State's request and Maurer refused to testify. The court ordered him to answer the State's question and he refused. The court then had the jury removed and held a contempt hearing and advised the witness as to his immunity and the consequences of his refusal. The witness then agreed to testify and did testify when the jury was recalled. The defense contends it was reversible error for the State to place Maurer on the stand when it knew he would plead the fifth amendment in front of the jury.

We agree with the appellate court that the episode involving the witness' claiming his privilege did not call for a mistrial either on the theory of prosecutorial misconduct or on a theory of actual or potential prejudice. The problem presented when a witness invokes his fifth amendment privilege in the presence of the jury is not new. Our court has held on several occasions that it is reversible error for the prosecutor to compel a witness to claim his constitutional privilege before the jury when the effect is to suggest by implication or innuendo that the defendant is guilty of a crime. (*People v. Myers* (1966), 35 Ill. 2d 311; *People v. Haran* (1963), 27 Ill. 2d 229; *People v. Bennett* (1953), 413 Ill. 601.) However, the act of a prosecutor calling a witness to the stand with advance knowledge that the witness will invoke the fifth amendment may or may not be error. Each case must be decided

in light of its own facts and circumstances, and considera-
tion must be given to the motive of the prosecutor in
calling the witness and to the likelihood of the jury
drawing unwarranted inferences against the defendant
from the fact that the witness has declined to testify on
constitutional grounds. (*United States v. Quinn* (8th Cir.
1976), 543 F.2d 640.) The United States Supreme Court,
in *Namet v. United States* (1963), 373 U.S. 179, 10 L. Ed.
2d 278, 83 S. Ct. 1151, noted two situations found in
lower court opinions that constitute reversible error when
a prosecutor forces a witness to assert his fifth amendment
privilege in front of a jury: first, "when the Government
makes a conscious and flagrant attempt to build its case
out of inferences arising from use of the testimonial
privilege," and second, where "a witness' refusal to answer
adds critical weight to the prosecution's case in a form not
subject to cross-examination." *Namet v. United States*
(1963), 373 U.S. 179, 186-87, 10 L. Ed. 2d 278, 283-84,
83 S. Ct. 1151, 1154-55.

The present situation does not fall within either of the
situations noted by the Supreme Court. Here, the prose-
cutor had sought and obtained for the witness a grant of
immunity from prosecution. Thereafter, the prosecutor
did not believe the witness could claim the privilege due to
the immunity granted and had every right to demand and
to expect the witness' testimony under compulsion by the
court if necessary. (*Lefkowitz v. Turley* (1973), 414 U.S.
70, 38 L. Ed. 2d 274, 94 S. Ct. 316.) The prosecution
made no conscious or flagrant attempt to bolster its case as
the result of the invocation by the witness of the
testimonial privilege. Nor do we find that the one
unjustified invocation of the privilege was of such signifi-
cance as to add critical weight to the prosecution's case in
a form not subject to cross-examination. The effect of the
answer was minimized or nullified when the witness later
recanted and returned to the witness stand and testified,
and was subject to questioning by all counsel. Any threat
to the defendant's sixth amendment rights of confronta-

tion and cross-examination, due to Maurer's pleading the fifth amendment in front of a jury, was eliminated. (*Namet v. United States* (1963), 373 U.S. 179, 10 L. Ed. 2d 278, 83 S. Ct. 1151; *United States v. Quinn* (8th Cir. 1976), 543 F.2d 640; *United States v. Anderson* (D.C. Cir. 1974), 509 F.2d 312; *United States v. Foster* (7th Cir. 1973), 478 F.2d 1001; *United States v. Puntillo* (7th Cir. 1971), 440 F.2d 540.) Thus, we hold that the procedure followed did not give rise to reversible error.

The second issue is whether the trial court properly allowed the testimony of Frank Foley and admitted the charts prepared by him into evidence. Frank Foley, an investigator in the office of the Illinois Attorney General, was called as a State's witness. The foundation was laid showing that he was an accountant capable of analyzing voluminous records. He testified to having examined 1,200 to 1,250 invoices selected by the prosecutor from a much larger number subpoenaed from the defendant distributors. (This case originally involved several beer distributor defendants.) He stated that he reviewed, tabulated, summarized and charted the beer price invoices. The invoices selected concerned beer sales by various defendants of the highest selling brands in the most popular container sizes for a 3-day period in late December 1969. Foley's charts depicted the prices which these invoices indicated the defendants charged during the period, and indicated a simultaneous price increase by the distributors, including the present defendant. The charts were to graphically demonstrate to the jury what the sum of the invoices showed and to determine whether the beer invoices obtained from the defendants confirmed that they actually did increase prices in conformity with price increase announcements issued earlier by them. The defense objected to the charts being introduced into evidence, but the judge admitted them since the invoices could be admitted as evidence. The defense now argues that Foley should not have been allowed to testify as an expert, that

any expertise he might have was not utilized, and that the charts should not have been admitted into evidence.

It is generally accepted in Illinois that where originals consist of numerous documents, books, papers or records which cannot be conveniently examined in court, and the fact to be proved is the general result of an examination of the whole collection, evidence may be given as to such result by any competent person who has examined the documents, provided the result is capable of being ascertained by calculation. The witness' testimony is admissible since it is merely a statement of what those instruments show and the voluminous character of the original documents precludes their convenient examination in court. (*LeRoy State Bank v. J. Keenan's Bank* (1929), 337 Ill. 173; *People v. Cowgill* (1929), 334 Ill. 635; *People v. Sawhill* (1921), 299 Ill. 393; *Reinke v. Sanitary District* (1913), 260 Ill. 380.) In this case the number of invoices to be examined, 1,200 to 1,250, is such that it would be inconvenient for the jurors to be expected to look at each document and plot in their minds the significance of each. Foley's charts only simplified and clarified what the invoices would show if the jurors took the time and had the ability to chart the details. It is obvious that it is impractical to require the jury to read the entire mass of documents and entries. The convenience of the trial demands that the other evidence be permitted in the form of the testimony of a competent witness who has perused the entire mass of documents and states summarily the net result. (4 Wigmore, Evidence sec. 1230 (Chadbourn rev. ed. 1972).) Also, it was necessary for the State to demonstrate to the court that Foley had the ability to summarize these invoices before his testimony or charts could be admitted into evidence. Thus, although he did not testify as an expert in that he did not express an *opinion,* his expertise demonstrated that he had the ability to examine and summarize the invoices.

The defendant argues that Foley's charts should be

excluded because they do not represent an examination of the whole evidence. However, the evidence indicates that the invoices presented to Foley covered all of the sales for the particular defendants of certain classes of beer and the types of containers charted for the 3-day period in question. The defendant contends that the sales of all beers sold were not charted for the dates in question. These charts were merely summaries of the results of Foley's examination of particular invoices, setting forth what they revealed with regard to price increases for particular beers in certain container sizes. The defendant had an opportunity to, and did, cross-examine Foley at length about brands and containers not charted. Michael Maurer also testified that certain beers were not subject to the price rise. Foley's testimony only went to prove the State's proposition that there was a simultaneous increase in prices among the defendants in the distribution of particular beers for a limited number of days. It is within the discretion of the court to admit such statements or schedules of figures or the results of the examination of numerous documents to be introduced into evidence. (*LeRoy State Bank v. J. Keenan's Bank* (1929), 337 Ill. 173.) Therefore, we find the admission of the testimony and charts was within the discretion of the court.

Thirdly, the defendant contends it was denied its statutory right to a speedy trial. In considering this question we are compelled to look at the extensive calendar of events in this case. The indictments were returned in November 1971 and the defendant filed a comprehensive discovery motion on January 7, 1972. On February 7, 1972, the defendant filed a motion for an immediate trial pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 103—5). On May 19, 1972, the defendant's motion to dismiss was allowed. The State appealed and this court reversed the lower court's order. (*People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332.) The mandate was

filed in the trial court on February 6, 1973. At this point, the 160 days started running anew. The trial court had still not passed on defendant's discovery motion. On March 12, 1973, the trial judge recused himself and a new judge was assigned. On April 26, 1973, the new judge was substituted on motion of a codefendant and the defendant did not object to the action. Defendant's discovery motion was not called for hearing until June 7, 1973. During this period after the mandate, the defendant took no steps to have its motion heard. The court ordered the State to comply with the motion by July 3, 1973, and continued the trial date from June 18, 1973, to August 20, 1973, on its own motion, knowing that the trial date was set after the 160-day limit had run. On July 12, 1973, the defendant filed a motion for substitution of judges, which was denied. However, the court made a specific finding of fact that the motion was filed as part of an attempt to delay the trial. On July 18, 1973, 161 days after filing the supreme court mandate, the defendant filed a motion for discharge, which was denied. Thereafter, the defendant and codefendants renewed their motions for substitution of judge, which were allowed, and Judge Andrew Stecyk was assigned to try the case on November 9, 1973. On January 3, 1974, the court allowed the defendant's motion dismissing the case, but upon motion of the State, the court reconsidered and denied the motion on January 31, 1974. The jury selection began on April 15, 1974. The defendant filed another motion for discharge on April 18, 1974, before the jury selection was complete.

The defendant's contention that it was denied a speedy trial turns upon whether it is chargeable with the delay. If there was no delay attributable to the defendant, then its July 18 motion should have been granted. It is incumbent upon a defendant to show, when he is not tried within 160 days, that the delay of the trial is not attributable to him and the record must affirmatively establish this fact. (*People v. Jones* (1965), 33 Ill. 2d 357.)

Certain discovery motions require much more time to fulfill than others. The information may be easily accessible or it may only be obtained after difficult search and inquiry. Therefore, some discovery motions may cause delay while others do not. This is a factual question that calls for the trial court's appraisal and we should give great weight to the trial court's finding. Also, it is incumbent upon the defendant to decide how he wishes to prepare for trial, and any course that he chooses that causes delay is charged to him. *People v. Johnson* (1970), 45 Ill. 2d 38.

In addition to the undisposed-of discovery motion, the docket sheets reveal that between March 13, 1973, and July 18, 1973, numerous motions were filed by all parties to the litigation. On March 27, 1973, the case was set for trial for May 21, 1973, and it was ordered that all motions were to be filed by April 19, 1973. However, on April 10, 1973, a motion for substitution of judge was filed by a codefendant and it was allowed on May 16, 1973. The case was assigned to Judge Sherrick from Douglas County. He could not hear the case on May 21, 1973, the date previously set for trial, so the case was reset for trial for June 18, 1973, and all motions were set for hearing on June 7, 1973. On that date, Judge Sherrick ruled on the pending motions and ordered that the evidence deposition of Oscar A. Maurer be taken on July 12, 1973. On June 29, 1973, the defendant herein, along with other defendants, moved to cancel or continue the deposition of Oscar A. Maurer. On July 12, 1973, several additional motions were presented to the court by the various defendants, including a motion by the defendant Maurer Distributing Company, for substitution of judge. The various motions for substitution of judge were denied on that date but were subsequently renewed and allowed. In view of the many motions presented by all of the defendants, and considering the fact that extensive discovery had to be complied with by the State, we will accept the trial court's determination that the defendant was not entitled to a

discharge on the July 18, 1973, motion.

When the defendant made a motion for substitution of judge and that motion was allowed, the running of the 160-day period was again tolled. (*People v. Zuniga* (1973), 53 Ill. 2d 550.) That term of 160 days expired on April 17, 1974, after the selection of the jury had started but prior to the defendant's motion for discharge. We previously held in *People v. Williams* (1974), 59 Ill. 2d 402, that the speedy trial act is satisfied by beginning the process of selecting the jury for the trial of the case. Thus, the defendant, Maurer Distributing Company, was afforded the statutory right to a speedy trial.

The defendant alleges several trial errors which are characterized in the defendant's brief as severally and cumulatively denying it a fair trial in accordance with due process safeguards. We have examined these contentions and have concluded that the trial court did not commit reversible error. This trial involved multiple defendants and extended over a period of time. The record is voluminous. It is highly unlikely that a trial of this magnitude involving as many defendants and as many attorneys as were involved in this case could be conducted in such a clinical atmosphere that no technical errors would be committed. The appellate court in its opinion concluded that these issues did not involve reversible error. (See 65 Ill. App. 3d 790, 799-800.) We agree. It is unnecessary for us to unduly lengthen this opinion by further discussion of these issues, which we have determined to be without merit.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*