THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JULIO C. IZQUIERDO, Defendant-Appellant.

Fourth District   No. 4—93—0466

Argued March 22, 1994.—Opinion filed June 2, 1994.

Richard S. Kling (argued), of Chicago-Kent Law Offices, of Chicago, for appellant.

Brett Irving, State's Attorney, of Pittsfield (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Julio Izquierdo, was charged by information with one count of unlawful possession of a controlled substance with the intent to deliver (Ill. Rev. Stat. 1991, ch. $56^{1}/_{2}$, par. 1401(a)) and one count of controlled substances trafficking (Ill. Rev. Stat. 1991, ch. $56^{1}/_{2}$, par. 1401.1). Following a jury trial in the circuit court of Pike County, defendant was found guilty on both counts. After a sentencing hearing, defendant received concurrent sentences of nine years for possession with intent to deliver and 18 years for controlled substances trafficking. On appeal, defendant argues (1) he was not proved guilty beyond a reasonable doubt on either count; (2) reversible error occurred when the State called a witness knowing he was not going to cooperate; and (3) he was denied effective assistance of counsel. We agree defendant was not proved guilty beyond a reasonable doubt of trafficking and that error occurred when the State called a witness knowing he would claim his privilege against self-incrimination. Therefore, we reverse on both counts and remand for a new trial on the possession count only.

Defendant's vehicle was stopped in Pike County on April 5, 1992, by an Illinois State trooper for failure to display registration. When informed of the reason for the stop defendant pointed out the valid temporary registration on the back window of his hatchback car. Both defendant and his passenger, Peter Reason, produced driver's licenses for identification. While checking the registration, the trooper noticed a white powdery substance on the floorboard underneath the hatchback. Defendant informed him it was sugar. The trooper advised defendant he was going to give him a ticket for improper display of registration and ran a driver's license check on both defendant

and Reason and asked for routine backup because of the white powdery substance.

Defendant and Reason exited the vehicle and inspected the powdery substance with the trooper. The substance turned out to have the appearance, feel and taste of sugar. The trooper then noticed a box and sack behind the passenger seat and Reason told him they were his postal scales and showed them to the trooper. A radio transmission was received stating defendant's driver's license was suspended and he was issued a citation. Reason's license was valid so he got back in the driver's seat of the vehicle.

By this time the requested backup had arrived and the two officers asked and were given permission to search defendant's vehicle. Reason exited the driver's side holding a road atlas to his side covering his groin area. Twice he was requested to put his hands up and refused. Finally, a trooper pulled the atlas away from Reason's body and a package slid down the inside of Reason's pants to the ground. The package consisted of two plastic bags inside of which was a Ziploc bag containing a white powdery substance appearing to be cocaine. The substance was later tested and confirmed as 233 grams of 89% pure cocaine. Defendant's fingerprints were not found on the package. No contraband was found anywhere on defendant's person. A rolled up dollar bill with cocaine residue was recovered from the map pouch next to the front passenger seat where Reason had originally been seated. Cash in the amount of $300 was found on defendant and $1,857 was found on Reason. The demeanor of defendant during the traffic stop was calm, passive and cooperative while Reason was nervous and uncooperative.

Defendant later explained to the trooper he knew nothing about the cocaine on Reason but had only been hired by him to transport Reason from Michigan to Kansas because Reason had missed his plane. Defendant lived in Michigan and worked for a used car dealer with whom Reason did business as he also sold used cars. Defendant was to be paid $200 for the trip and Reason would buy him a plane ticket back to Michigan as well as buy defendant's car.

Defendant called no witnesses and did not testify in his own behalf. He was convicted of trafficking and possession with intent to deliver.

The State argues defendant's reasonable doubt arguments are not properly before this court on appeal because this is an appeal from a post-conviction proceeding. Reasonable doubt of a defendant's guilt is not a proper issue for a post-conviction proceeding. (*People v. Frank* (1971), 48 Ill. 2d 500, 504, 272 N.E.2d 25, 27.) However, we are not dealing with a post-conviction proceeding.

Supreme Court Rule 606(b) provides a notice of appeal must be filed within 30 days of entry of final judgment "or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion." (134 Ill. 2d R. 606(b)).) Final judgment occurs in a criminal case only *after* a defendant is sentenced. (*People v. Woolsey* (1990), 139 Ill. 2d 157, 161, 564 N.E.2d 764, 765.) If a motion to reconsider the sentence is filed, the time in which to file the appeal begins to run from the date the motion is denied (*People v. Clark* (1979), 80 Ill. App. 3d 46, 48-49, 399 N.E.2d 261, 264), even though this extends the 30-day period. (Ill. Ann. Stat., ch. 110A, par. 606, Historical and Practice Notes, at 92 (Smith-Hurd 1985).) Defendant had 30 days after the denial of his motion for reduction of sentence to file a notice of appeal and he filed his notice the same day as the denial of the motion. The notice clearly states it is an appeal from the order of May 25, 1993, which contained a denial of the motion for reduction of sentence. The defendant filed a premature notice of appeal more than 30 days after the denial of his original post-trial motions. However, his motion for reduction of sentence was timely filed and remained pending. The trial court apparently believed it necessary to treat defendant's motion to vacate the judgment and reduce his sentence as a post-conviction proceeding to preserve defendant's appellate rights. This was not necessary. The notice of appeal was timely filed from the final order entered in this matter, the denial of the motion for reduction of sentence, and the issue of reasonable doubt as to defendant's guilt on each count is properly before this court.

There are two elements of the offense of controlled substances trafficking: that controlled substances were brought or caused to be brought into Illinois and venue, *i.e.*, where the act of causing drugs to be brought into the State was committed. (Ill. Rev. Stat. 1991, ch. 56¹/₂, par. 1401.1(a); see *People v. Caballero* (1992), 237 Ill. App. 3d 797, 803, 604 N.E.2d 1028, 1033.) Defendant argues neither one was proved in this case.

No evidence was introduced showing defendant brought or caused to be brought controlled substances into Illinois while he was *located* in Pike County. However, the specific venue requirement is no longer valid in Illinois. Defendant's offense was committed on April 5, 1992, after the enactment of section 1—6(r) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 1—6(r)), effective January 1, 1992, which provides a person committing the offense of controlled substances trafficking may be tried in any county.

There was also no evidence, however, that defendant brought or caused to be brought any controlled substance into Illinois.

■ The evidence showed defendant's vehicle was registered in Michigan, he worked there and was to be given a plane ticket back to Detroit at the end of the trip. He also indicated specifically to a trooper he had come from Michigan. There is no evidence where the cocaine taken from Reason originated. The trip originated in Michigan but that does not rule out the possibility a stop was made in Chicago or elsewhere in Illinois where the cocaine may have been obtained. The State relies on the origin of the trip to establish the substance was brought into Illinois. The State argues it may be inferred a controlled substance was brought into the State.

This appears to be a case of first impression. The evidence relied on by the State is very slim. Defendant's explanation for the trip, that he was driving Reason to Kansas after he missed his plane and Reason was going to pay him $200 for his trouble as well as pay for defendant's airfare back to Detroit after purchasing his car, is ridiculous. While this improbable story might be used to infer suspect purposes for the trip as a whole, it does not prove the origin of the controlled substance. The inferences simply are not strong enough to suggest beyond a reasonable doubt the drugs originated in Michigan or elsewhere outside Illinois.

Following the standard of review enunciated in *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789, and viewing the evidence in the light most favorable to the State, no rational trier of fact could have found defendant guilty of controlled substances trafficking as the State failed to prove the controlled substance was brought into Illinois. Hence, we reverse defendant's conviction for controlled substances trafficking.

Defendant's contention the State committed reversible error when it called a witness knowing he was not going to cooperate is dispositive of the remainder of the case.

As its last witness the State called William Dusenberry, who testified as follows:

"Q. And, Mr. Dusenberry, where do you reside?

A. At the Pike County Jail.

Q. And how long have you been residing within the Pike County Jail?

A. Three months and thirteen days.

Q. And there are currently charges pending on you?

A. Yes, there are.

Q. You're scheduled to go before a jury?

A. The 10th of August.

Q. And have any deals or offers been made to you for your testimony today?

A. No. Well, you know, I've been over there and you don't believe me. You know, you believe me when it suits your benefits. I would like to plead the Fifth.

Q. Okay, have you had conversations with [defendant] while a resident of the jail?

A. I plead the Fifth.

Q. Is there something incriminating about conversations you may have had with [defendant], incriminating yourself?

A. [No response].

[The Prosecutor]: Your Honor, I'd ask that the witness be directed to answer, and I have a motion to make at this point in time.

THE COURT: Mr. Ward, would you take the jury back into the jury room."

Prior to calling this witness the prosecutor indicated he wanted to call him as a hostile witness because Dusenberry had first written a letter to the State's Attorney indicating an incriminating conversation he had with defendant and had later written another letter denying the contents of the first letter. The prosecutor was worried the witness would change his statement in court and indicated to the trial court the witness was reluctant to testify. The court did not allow the witness to be called as an adverse witness but left open the possibility of readdressing the issue if the need arose.

The prosecutor then called Dusenberry as a witness *knowing* he was not going to cooperate, was disavowing his prior statement and was likely to invoke his privilege against self-incrimination. It is not automatically error for a prosecutor to call a witness to the stand with advance knowledge the witness will invoke the fifth amendment. (*People v. Crawford Distributing Co.* (1979), 78 Ill. 2d 70, 74-75, 397 N.E.2d 1362, 1365.) Each case must be decided on its own facts and circumstances and both the motive of the prosecutor and the likelihood of the jury drawing unfounded inferences against the defendant must be considered. (*Crawford Distributing*, 78 Ill. 2d at 74-75, 397 N.E.2d at 1365.) It is reversible error for a prosecutor to force a witness to assert his fifth amendment privilege if either the State makes an obvious attempt to build its case out of inferences arising from the privilege or where the witness' refusal to testify added critical weight to the State's case. *People v. O'Dell* (1980), 84 Ill. App. 3d 359, 373, 405 N.E.2d 809, 820.

In this case, the prosecutor was not allowed to treat the witness as hostile and ask a series of leading questions setting forth the State's theory of the case. In addition, the jury was instructed to disregard the appearance of the witness and not consider his presence in their deliberations. However, there was no reason to call Dusen-

berry other than to testify *against* defendant and his lack of cooperation reflected badly on defendant. The prosecutor's motive was to have the jury infer Dusenberry was trying to hide information which could hurt defendant. It was reversible error for the prosecutor to call Dusenberry as a witness in these circumstances knowing he would invoke his fifth amendment privilege. We reverse defendant's conviction for possession of a controlled substance with intent to deliver and remand for a new trial.

Defendant contends, however, he was not found guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver. We have reviewed the record and find the evidence was sufficient to permit the finder of fact to conclude defendant was proved guilty beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.) Double jeopardy does not bar his retrial, although our holding in no way implies we have made a finding as to defendant's guilt that would be binding on the court on retrial. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375.

In light of our resolution of these issues, we need not address defendant's argument he was denied effective assistance of counsel.

Defendant was not proved guilty of controlled substances trafficking beyond a reasonable doubt. The prosecutor's calling of a witness knowing he was not cooperative and was likely to invoke his privilege against self-incrimination was error. We reverse defendant's convictions and remand for a new trial on the charge of possession of a controlled substance with intent to deliver.

Reversed and cause remanded.

LUND and GREEN, JJ., concur.