NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200431-U

NO. 4-20-0431

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 24, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ANTWONE LAMONT CREATER, | ) | No. 17CF970 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

_____

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment.

¶ 2    Defendant, Antwone Lamont Creater, appeals the trial court's first-stage dismissal of his *pro se* postconviction petition. On appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent defendant. OSAD has filed a motion to withdraw as defendant's appellate counsel, asserting defendant's appeal presents no potentially meritorious issues for review. We grant OSAD's motion and affirm the trial court's dismissal of defendant's postconviction petition.

¶ 3                              I. BACKGROUND

¶ 4    In September 2017, the State charged defendant by information with two counts of unlawful delivery of a controlled substance (720 ILCS 570/407(b)(2) (West 2016); 720 ILCS

570/401(d)(i) (West 2016)). Before trial, the State dismissed count I and proceeded solely on count II.

¶ 5                                      A. Jury Trial

¶ 6                                 1. *Motion for a Continuance*

¶ 7          On the morning defendant's jury trial was scheduled to begin, defense counsel approached the court, stating, "I don't know if this is the time to raise this issue or not, but the defendant is asking to move to continue the trial for a couple of reasons." Counsel explained defendant sought three witnesses, Ameer Taylor, Bryant McClelland, and Eddie Creater, to testify on defendant's behalf. (We note the record and defendant's postconviction petition refer to Bryant McClelland and also Brian McCullen. For consistency, we will refer to this individual as "McClelland.") Taylor was under subpoena, but he had an unrelated warrant for his arrest. McClelland and Creater had not been disclosed to the State as potential witnesses.

¶ 8          Defense counsel conferred with the State off the record, and the State agreed to waive any objections to the late disclosures. Counsel stated he was "optimistic" McClelland would willingly come to testify the following day but thought it was unlikely Taylor would appear. Counsel informed the court Creater was in custody and would be available to testify. Counsel believed Taylor's trial testimony would be cumulative of McClelland's testimony, as the purpose of the testimony was to contradict expected testimony from State witnesses Casey Wheeler and Dorian Parker that Wheeler and Parker were not previously acquainted. Counsel stated, "[I]f we could get [McClelland's] testimony, I think that could substitute for Taylor." Therefore, counsel believed a continuance was not necessary, as McClelland was available if needed.

¶ 9                                      2. *Trial*

¶ 10        The State's first witness, Casey Wheeler, testified about her role as a paid confidential source with the Bloomington Police Department and, specifically, her purchase of heroin from defendant in September 2017. After recounting her past substance abuse struggles and her criminal record, Wheeler relayed the details of her interaction with defendant to purchase heroin. She testified defendant, via phone calls and text messages, instructed her to go to several different locations in Bloomington before eventually directing her to a bus stop, where the transaction took place. Defendant's cousin, Dorian Parker, arrived at the bus stop, and Wheeler and Parker engaged in the drug transaction. Wheeler stated she gave Parker $140 of the prerecorded currency provided by the police and Parker gave her one packet of heroin and a methadone bottle she had left at McClelland's house. She confirmed defendant arrived at the bus stop after the transaction and she spoke with him. The State introduced text messages between Wheeler and defendant where defendant expressed concern about the police watching him and Wheeler "setting him up." The text messages also alluded to defendant sending someone to meet Wheeler. Regarding her pending unrelated felony, she said she was hoping for leniency, but she indicated no promises were made. She testified she decided to become a confidential source because she wanted to stop using drugs and because she "knew that if [defendant] was off the streets I couldn't—I couldn't go there. I couldn't go to him."

¶ 11        Dorian Parker testified that in exchange for his testimony, the State would dismiss two of his nonprobationable felony counts arising from this incident and allow him to plead guilty to an amended probationable count. However, there was no agreement as to sentence. Parker said he had been a heroin addict for eight years, and he and his wife came to Bloomington from Harvey, Illinois, to visit his wife's cousin (defendant) over the Labor Day weekend. Parker stated he met with defendant on September 5, 2017, and agreed to deliver drugs for defendant.

Defendant instructed Parker to deliver an empty methadone bottle and two packs of heroin to Wheeler at a bus stop, and defendant would provide a bag of heroin to Parker as payment in exchange for agreeing to the delivery. Parker testified after Wheeler provided him with $140, he provided her with two bags of heroin. After the drug transaction between Parker and Wheeler, defendant arrived. Parker testified "not even 30 seconds" later, police stopped Parker and defendant as they were walking away from the bus stop. Parker still had the recorded currency from the drug transaction in his pocket at the time of his arrest.

¶ 12　　　　Parker admitted signing an affidavit while in the McLean County jail, taking sole responsibility for the drug transaction and exonerating defendant. However, he said the body of the affidavit was not his handwriting, he did not know what it contained, and he signed it because he "felt pressured and *** was still coming off withdrawals from the drugs." He said defendant and defendant's brother (who was also incarcerated in the McLean County jail) pressured him daily to sign the affidavit.

¶ 13　　　　The State called several police officers involved in the planning and execution of the drug transaction between Wheeler and defendant. The testimony revealed officers observed Wheeler at the bus stop. An individual (later identified as Parker) approached and sat next to Wheeler on a bench. Police witnessed a hand-to-hand transaction as Wheeler put money on the bench, and Parker handed her something while picking up the money. Wheeler and Parker were engaged in conversation when another individual (later identified as defendant) approached the bus stop. Parker and defendant began walking away when other officers arrived and arrested them. Defendant had over $1700 in his pockets along with a cellular phone, which officers confirmed was the phone used to set up the drug transaction with Wheeler. Police also searched

Parker, who had $261 on his person, $140 of which was the "buy money" Wheeler used to purchase the heroin.

¶ 14         Todd Walcott, the lead detective on the case, testified concerning the benefits of using confidential sources in drug cases and explained the details involved in controlled-buy transactions. Wheeler contacted Walcott wanting to work as a confidential source and purchase heroin from defendant. On the day of the controlled-buy transaction, Walcott drove Wheeler to various locations to meet defendant and searched Wheeler before and after the drug transaction. After the transaction, Walcott met Wheeler at a nearby restaurant where she informed him the drug transaction was completed and provided him with a bag of heroin. A recorded interview of defendant was played before the jury. In the recording, defendant stated he directed Parker to give Wheeler her empty methadone bottle, but defendant did not direct Parker to deliver drugs to Wheeler. Defendant confirmed his cell phone number was the same one Wheeler used to set up the drug transaction but stated she contacted defendant regarding the return of her methadone bottle. A stipulation was read attesting to the proper foundational requirements for the drugs and testing by an Illinois State Police forensic scientist. Testing confirmed the substance was heroin weighing 0.1 gram.

¶ 15         Defendant elected not to testify or present any other evidence on his behalf. The jury found defendant guilty of unlawful delivery of a controlled substance.

¶ 16         B. *Krankel* Hearing and Motion for Judgment Notwithstanding the Verdict

¶ 17         After trial, defendant filed a letter and a *pro se* "Motion for a New Trial or Judgment N.O.V." In the letter, defendant alleged counsel was ineffective for failing to request a continuance to secure the testimony of Taylor and McClelland.

¶ 18        Shortly after defendant filed his *pro se* motion, counsel filed a "Motion for Judgment Notwithstanding the Verdict or for a New Trial." In the motion, counsel argued the State failed to prove the elements of the offense beyond a reasonable doubt and the finding of the jury was against the manifest weight of the evidence.

¶ 19        In January 2018, the trial court held a hearing on the motions. First, the court addressed defendant's letter claiming ineffective assistance. Defendant asserted if defense counsel had called McClelland, he would have testified Wheeler and Parker knew one another and McClelland was present when Wheeler called defendant. Defendant agreed Taylor was unavailable to testify because of his outstanding warrant, but he argued counsel should have requested a continuance to secure Taylor's testimony. Counsel explained McClelland was not called as a witness "as a matter of trial strategy." McClelland's testimony that Wheeler called defendant seeking to purchase drugs would have been counterproductive to defendant's claims Wheeler called only to request her prescription methadone bottle. McClelland was interviewed by police after he was disclosed as a witness and made statements contrary to his proposed testimony, which would have been used to "thoroughly impeach" McClelland's testimony at trial. As to Taylor, counsel explained Taylor did not appear despite being under subpoena, he could not contact Taylor, and his testimony would have been largely cumulative. Counsel stated during the hearing that defendant "did not ask me to continue this trial. *** And given [Taylor's] unavailability or his unwillingness to respond to the subpoena, and I think the defendant was anxious to go to trial, I did not ask to continue it." The court determined "no basis exist[ed] for ineffective assistance of counsel at this time," but defendant had preserved his claim for appeal.

¶ 20        The court then addressed counsel's motion for a judgment *n.o.v.*, in which he claimed the State failed to prove the elements of the offense beyond a reasonable doubt and the

- 6 -

finding of the jury was against the manifest weight of the evidence. The court denied the motion for judgment *n.o.v.*

¶ 21                                    C. Sentencing

¶ 22        The court proceeded to sentencing. The State offered, as a demonstrative exhibit, a list of dates identifying when defendant had been in custody since 1997. Defense counsel offered an acceptance letter defendant received from Midwest Technical Institute and defendant's payroll records from his employment in 2017.

¶ 23        During argument, the State detailed defendant's drug-related convictions starting in 1988. The State argued the substance delivered in this case, heroin, was a highly toxic substance and defendant committed the offense while on parole. The State argued a 20-year sentence was (1) necessary to deter defendant and others and (2) appropriate "because the only thing the defendant has learned through his numerous terms in the Department [of Corrections] is just different ways of trying to evade detection." The State noted the instant conviction was defendant's seventh delivery charge. Defendant had violated parole "every single time for another delivery charge."

¶ 24        Defense counsel argued the evidence at trial placed responsibility for the transaction on Parker. Counsel asserted Parker "was the primary drug deliverer and dealer in this case and, by his own testimony, was feeding his own drug habit." Counsel also asserted defendant was battling a drug addiction and anxiety disorder, which helped explain why he has been in and out of prison. Defense counsel recommended the court impose a 10-year sentence based on the "very small" quantity of drugs and defendant's limited involvement in "a crime of opportunity." Following the recommendations, defendant made a lengthy statement in allocution

professing his innocence. Defendant claimed he was used by Wheeler and Parker and characterized the jury's verdict as a "grave mistake."

¶ 25 Based upon its consideration of the information contained in the PSI, the recommendations, the statement in allocution, and the statutory factors in aggravation and in mitigation, the trial court sentenced defendant to 15 years in the Illinois Department of Corrections.

¶ 26 In January 2018, defendant filed a motion to reconsider his sentence, claiming "[t]hat given all the circumstances, the sentence imposed is excessive." In February 2018, the trial court held a hearing on defendant's motion and, after identifying the factors it considered when imposing the sentence originally, denied the motion.

¶ 27         D. Direct Appeal

¶ 28 On direct appeal, defendant argued only that his sentence was excessive. This court affirmed defendant's conviction and sentence. *People v. Creater*, 2020 IL App (4th) 180126-U, ¶ 30.

¶ 29        E. Postconviction Petition

¶ 30 On July 16, 2020, while his direct appeal was pending, defendant filed a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). Including exhibits and various attachments, defendant's petition was approximately 80 pages. Defendant made multiple claims, including the following: (1) the evidence was insufficient to sustain a conviction and the jury's verdict was against the manifest weight of the evidence; (2) the State knowingly used perjured testimony; (3) the State engaged in prosecutorial misconduct; (4) actual innocence; (5) ineffective assistance of counsel where counsel (a) allowed the State to use the perjured testimony of Wheeler and Parker, (b) failed to

- 8 -

seek a continuance to secure the testimony of Taylor and McClelland, (c) failed to call Johnathan Jamerson, who wrote the affidavit Parker signed, (d) failed to bar Parker's testimony prior to trial for being false and based on a "sweetheart plea deal," (e) misrepresented what Taylor and McClelland's testimony would have been, and (f) failed to introduce defendant's paystubs; (6) malicious prosecution; (7) violations of his fourth amendment rights; (8) fellow inmate Michael Powell would have testified on defendant's behalf; and (9) phone records "may" have exonerated defendant.

¶ 31    Defendant attached to his petition (1) nonsequential portions of official transcripts with handwritten comments, (2) pages 2 through 10 and page 15 from his appellant's brief on direct appeal, (3) Parker's affidavit, (4) a Bing search definition of "methadone," (5) defendant's acceptance letter from Midwest Technical Institute, and (6) photocopies of paystubs.

¶ 32    On August 20, 2020, the trial court entered a detailed nine-page written order. The court noted the length of defendant's petition ("approximately 75 pages") and its disorganization had "hampered" the court's review. Nevertheless, the court addressed each of defendant's claims and ultimately determined defendant's petition was frivolous and patently without merit.

¶ 33    This appeal followed.

¶ 34                                        II. ANALYSIS

¶ 35    On appeal, OSAD has filed a motion to withdraw as counsel and has included a supporting memorandum. The record shows proof of service on defendant. This court granted defendant leave to file a response on or by August 18, 2021, and with an extension of time, defendant has done so. The State also filed a brief contending OSAD's motion to withdraw as counsel should be granted. Based on our examination of the record, we conclude, as has OSAD, an appeal in this case would be without arguable merit.

¶ 36    "The Post-Conviction Hearing Act provides a procedural mechanism through which criminal defendants can assert that their federal or state constitutional rights were substantially violated in their original trials or sentencing hearings." *People v. Buffer*, 2019 IL 122327, ¶ 12, 137 N.E.3d 763 (citing 725 ILCS 5/122-1(a) (West 2014)). "A postconviction proceeding is not a substitute for a direct appeal but rather is a collateral attack on a prior conviction and sentence. The purpose of the proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal." *Buffer*, 2019 IL 122327, ¶ 12 (citing *People v. Harris*, 224 Ill. 2d 115, 124, 862 N.E.2d 960, 966 (2007)).

¶ 37    Once filed, a postconviction petition is subject to a three-stage adjudicatory process. *Harris*, 224 Ill. 2d at 125. At the first stage, section 122-2.1 of the Act directs the trial court to independently assess the substantive merit of the petition. *Harris*, 224 Ill. 2d at 125-26 (citing 725 ILCS 5/122-2.1 (West 2002)). If the court finds the petition is "frivolous" or "patently without merit," the Act requires that the court dismiss it, and this dismissal is a final order. 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition is frivolous or patently without merit when its allegations, taken as true and liberally construed, fail to present the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). A petition may be dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 12, 912 N.E.2d 1204, 1209 (2009). "A petition lacks an arguable basis in law when it is grounded in 'an indisputably meritless legal theory,' for example, a legal theory which is completely contradicted by the record." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1075 (2010) (quoting *Hodges*, 234 Ill. 2d at 16). A petition "lacks an arguable basis in fact when it is based on a 'fanciful

factual allegation,' which includes allegations that are 'fantastic or delusional' or belied by the record." *Morris*, 236 Ill. 2d at 354 (quoting *Hodges*, 234 Ill. 2d at 16-17). Our review of a first-stage dismissal of a postconviction petition is *de novo* (*Buffer*, 2019 IL 122327, ¶ 12), affording no deference to the trial court's judgment or reasoning. *People v. Walker*, 2018 IL App (1st) 160509, ¶ 22, 128 N.E.3d 978.

¶ 38        In its memorandum, OSAD details the claims raised by defendant in his postconviction petition, as well as identifying and addressing a separate procedural issue.

¶ 39                        A. Ineffective Assistance of Counsel

¶ 40        Defendant claimed his trial counsel provided ineffective assistance on several bases. A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show "counsel's performance 'fell below an objective standard of reasonableness.' " *People v. Valdez*, 2016 IL 119860, ¶ 14, 67 N.E.3d 233 (quoting *Strickland*, 466 U.S. at 688). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional error, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010). " 'Effective assistance of counsel refers to competent, not perfect representation.' " *Evans*, 209 Ill. 2d at 220 (quoting *People v. Stewart*,

104 Ill. 2d 463, 491-92, 473 N.E.2d 1227, 1240 (1984)). Mistakes in trial strategy or tactics do not necessarily render counsel's representation defective. See *People v. Hanson*, 238 Ill. 2d 74, 107, 939 N.E.2d 238, 258 (2010) (finding defense counsel's decision not to file a motion *in limine* instead of objecting at trial was not objectively unreasonable).

¶ 41          1. *Failure to Request a Continuance and Failure to Call Witnesses*

¶ 42          Defendant alleged in his petition his trial counsel was ineffective for failing to ask for a continuance on the day his trial was scheduled to begin so that he could procure three additional witnesses. This claim is positively rebutted by the record. On the morning defendant's jury trial was scheduled to begin, counsel stated to the court, "I don't know if this is the time to raise this issue or not, but the defendant is asking to move to continue the trial for a couple of reasons." Counsel explained the status of the witnesses defendant hoped to procure and stated, "So given that, Judge, we don't have confirmation as to the one witness, Mr. Taylor, who's under subpoena, and we have reason to believe he's not going to appear because of his active warrant, and the late disclosure of two other potential witnesses, we move to continue." Counsel conferred with the State off the record, and the State agreed to waive any objection to the late disclosures. Other than Taylor, who was unlikely to appear given his outstanding warrant, the court determined in its discussion with the parties, due to the State's acceptance of the late disclosed witnesses and the possibility some of the testimony sought may prove to be cumulative at best, defense counsel was in a position to determine if the witnesses' testimony would be needed without a continuance.

¶ 43          As to whether defense counsel was ineffective for not calling the witnesses defendant sought with his request for a continuance, "the decision whether to call a certain witness for the defense is a matter of trial strategy, left to the discretion of counsel after

consultation with the defendant." *People v. Peterson*, 2017 IL 120331, ¶ 80, 106 N.E.3d 944. As a result, such decisions will not ordinarily support a claim for ineffective assistance of counsel and even "a mistake in trial strategy" will not, by itself, render representation constitutionally defective. *Peterson*, 2017 IL 120331, ¶ 80.

¶ 44　　　　Defendant identified two potential witnesses. Taylor was under subpoena, but he had an unrelated warrant for his arrest and could not be contacted. As counsel explained during the *Krankel* hearing, Taylor was unwilling to respond to the subpoena and could not be located. It was reasonable for counsel to conclude a continuance would not increase the likelihood Taylor would appear to testify at trial when he was avoiding a warrant for his arrest.

¶ 45　　　　Defendant does not explain in his petition what McClelland's proposed testimony would have been, only that it would have been "different." At the *Krankel* hearing, defendant asserted McClelland would have testified Wheeler and Parker were previously acquainted and that McClelland was with defendant when Wheeler contacted him seeking drugs. Counsel stated during the *Krankel* hearing McClelland's testimony would have been counterproductive to defendant's claims Wheeler only requested the return of her prescription methadone bottle. Further, Parker admitted on cross-examination he was staying at McClelland's house when defendant and Wheeler were present. Wheeler similarly admitted on cross-examination that Parker seemed familiar, and she had "probably" used drugs with him before. Defense counsel's decision not to call McClelland as a witness was a matter of trial strategy, and, in light of the other testimony at trial, a reasonable one. Thus, there is no arguable merit to the claim counsel provided ineffective assistance.

¶ 46　　　　　2. *Failure to Object to Perjured Testimony and Hearsay*

¶ 47        Defendant alleged counsel was ineffective for "allowing [the] State to use perjured testimony" from Wheeler and Parker. "[T]he State's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of due process of law." *People v. Olinger*, 176 Ill. 2d 326, 345, 680 N.E.2d 321, 331 (1997). "A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict." *Olinger*, 176 Ill. 2d at 345. " 'Where a criminal defendant seeks to overturn his conviction on the basis of perjured testimony, the defendant must not merely allege perjury by State's witnesses, but must present clear, factual allegations of perjury and not mere conclusions or opinions.' " *People v. Moore*, 2012 IL App (4th) 100939, ¶ 28, 975 N.E.2d 1083 (quoting *People v. Thomas*, 364 Ill. App. 3d 91, 104, 845 N.E.2d 842, 855 (2006)).

¶ 48        In his postconviction petition, defendant's claims of perjured testimony are largely conclusory and are unsupported by the record or attachments to the petition. Defendant's assertion that Wheeler and Parker were "not being truthful or trustworthy" during their testimony does not amount to proof they committed perjury. Trial counsel thoroughly cross-examined both witnesses, highlighting inconsistencies in their testimony. However, "[m]ere inconsistencies in testimony do not establish perjury or that the State knowingly used perjured evidence." *People v. Amos*, 204 Ill. App. 3d 75, 85, 561 N.E.2d 1107, 1115 (1990). The jury had the opportunity to consider the impeachment evidence and inconsistencies in the witnesses' testimony, and it is their duty to resolve those inconsistencies. See *Evans*, 209 Ill. 2d at 211 ("It is the function of the trier of fact to assess the credibility of the witnesses, to determine the appropriate weight of the testimony, and to resolve conflicts or inconsistencies in the evidence."). Defendant's conclusory allegation trial counsel was ineffective for "allowing" the claimed perjured testimony, therefore, lacks arguable merit.

¶ 49　　　　　Defendant also contended counsel was ineffective for not objecting to hearsay statements from Parker, referring specifically to Parker's testimony as to his understanding of his plea agreement. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). " 'Hearsay *** is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule.' " *People v. Tenney*, 205 Ill. 2d 411, 432-33, 793 N.E.2d 571, 584-85 (2002) (quoting *Olinger*, 176 Ill. 2d at 357). Attorneys provide ineffective assistance when they allow the factfinder to consider improper hearsay. *People v. Jura*, 352 Ill. App. 3d 1080, 1093, 817 N.E.2d 968, 981 (2004). Parker recounted his understanding of the plea agreement he made with the State; his personal understanding and recollection is not hearsay. See *People v. Prather*, 2012 IL App (2d) 111104, ¶ 11, 979 N.E.2d 540 (stating evidence offered to show a person's knowledge or awareness of a circumstance and not to establish the truth of the circumstance is not hearsay). Therefore, there is no arguable merit to defendant's claim trial counsel should have objected to the testimony as hearsay.

¶ 50　　　　　　　　　　　3. *Failure to Introduce Paystubs*

¶ 51　　　　　Defendant alleged his counsel was also ineffective for failing to introduce defendant's paystubs. According to defendant, this evidence would have rebutted testimony from police that the $1702 found in defendant's possession was related to drug transactions. "[D]ecisions as to *** what evidence to present are viewed as matters of trial strategy and 'generally immune from claims of ineffective assistance of counsel.' " *People v. Brown*, 2018 IL App (4th) 160288, ¶ 47, 115 N.E.3d 408 (quoting *People v. West*, 187 Ill. 2d 418, 432, 719 N.E.2d 664, 673 (1999)). Even if defendant's paystubs were admissible, the fact that defendant had a legitimate job would not negate the possibility he also secured income from selling heroin.

In addition, defendant, who elected not to testify and raises no claim he was otherwise prevented from doing so, fails to explain how, absent his testimony, the jury would have been able to hear an alternate explanation for the large amount of currency found on his person. Defendant claimed he provided counsel with (1) a letter from Midwest Technical Institute showing he had been accepted for a welding program and (2) seven months of pay stubs. Defendant asserted, "I gave this two [*sic*] Mr. McEldowney and beg [*sic*] him to please present this to jury at my trial to show them that the money I had was not drug money and let them know that money was for school equipment for welding." Absent defendant's testimony, this was not possible. Further, introducing such evidence would have opened up an opportunity for the State to rebut the evidence with defendant's financial affidavit, in which he claimed he was unemployed and had an income of $196 per month. A decision not to introduce defendant's paystubs was sound trial strategy and therefore not subject to an ineffective assistance claim. See *Brown*, 2018 IL App (4th) 160288, ¶ 47.

¶ 52                              B. Insufficient Evidence

¶ 53          Defendant also alleged in his petition the evidence was insufficient to support his conviction beyond a reasonable doubt. "Questions as to the sufficiency of the evidence have been held not to present a constitutional question and therefore are not properly considered in post-conviction proceedings." *People v. Dunn*, 52 Ill. 2d 400, 402, 288 N.E.2d 463, 464 (1972); see also *People v. Izquierdo*, 262 Ill. App. 3d 558, 560, 634 N.E.2d 1266, 1268 (1994) ("Reasonable doubt of a defendant's guilt is not a proper issue for a post-conviction proceeding."). Thus, there is no meritorious argument postconviction relief could be granted to defendant based upon a challenge to the sufficiency of the evidence.

¶ 54                              C. Prosecutorial Misconduct

¶ 55    Defendant also alleged prosecutorial misconduct on multiple grounds: (1) knowing use of perjured testimony, (2) improper arguments, and (3) malicious prosecution.

¶ 56    The United States and Illinois Constitutions guarantee the right of all criminal defendants to a fair and impartial trial. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. This includes the right to a trial free from "pervasive prosecutorial misconduct that deliberately undermines the process by which we determine a defendant's guilt or innocence." (Internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 122, 871 N.E.2d 728, 744 (2007).

¶ 57    1. *Knowing Use of Perjured Testimony*

¶ 58    As discussed above (see *supra* ¶¶ 47-48), defendant offered no evidence the witnesses arguably committed perjury. Therefore, there is no arguable merit to defendant's claim the prosecution could have knowingly used perjured testimony.

¶ 59    2. *Improper Argument*

¶ 60    An opening statement should inform "the jury of what each party expects the evidence to prove," and it "may include a discussion of the expected evidence and reasonable inferences from the evidence." *People v. Kliner*, 185 Ill. 2d 81, 127, 705 N.E.2d 850, 874 (1998). Similarly, "[t]he prosecutor may comment during closing argument on the evidence and on any fair and reasonable inference the evidence may yield, even if the suggested inference reflects negatively on the defendant." *People v. Perry*, 224 Ill. 2d 312, 347, 864 N.E.2d 196, 217-18 (2007). "[C]omments that exceed the bounds of proper argument require reversal [citation], only if the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them." (Internal quotation marks omitted.) *People v. Jones*, 2016 IL App (1st) 141008, ¶ 23, 69 N.E.3d 226.

¶ 61 Defendant expressly points to a single remark by the State during opening statements. The State began its opening remarks by stating, "This case is about two things: Money and addiction. On September 5th of 2017, the defendant took advantage of two addicts for his own monetary gain." This comment is based on the evidence the State expected to be presented and reasonable inferences from that expected evidence, namely that defendant directed Parker, a confessed addict, to deliver heroin to Wheeler, another confessed addict. The comment was supported by the testimony presented at trial. The prosecutor's comment does not arguably rise to the level of prosecutorial misconduct.

¶ 62                                3. *Malicious Prosecution*

¶ 63 Defendant alleged he was maliciously prosecuted by the State. Malicious prosecution is a tort action, in which a plaintiff must demonstrate: "(1) that defendants began or continued the original criminal proceeding; (2) plaintiff received a favorable termination; (3) probable cause did not exist; (4) malice was present; and (5) plaintiff suffered damages." *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 96, 887 N.E.2d 656, 662 (2008). As a defendant filing a postconviction petition cannot have received a "favorable termination" on the charges he was convicted of, malicious prosecution is not a violation of constitutional rights appropriate for postconviction proceedings.

¶ 64 Insofar as defendant suggested the State's plea negotiations with Parker were improper, defendant provides no basis in the record and no supporting documentation that the State negotiated in bad faith to secure Parker's testimony against defendant. See *West*, 187 Ill. 2d at 425-26 ("[N]onfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act.").

¶ 65                                D. Actual Innocence

¶ 66 Defendant next asserted a claim of actual innocence. He alleged the testimony of Jamerson would demonstrate Parker did read the affidavit and was not pressured to sign it. The Illinois Supreme Court has recently described how actual innocence claims are evaluated:

> "To establish actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. [Citations.] Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence. [Citation.] Evidence is material if it is relevant and probative of the petitioner's innocence. [Citation.] Noncumulative evidence adds to the information that the fact finder heard at trial. [Citation.] Lastly, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *People v. Robinson*, 2020 IL 123849, ¶ 47.

Defendant did not explain in his petition how Parker's affidavit or Jamerson's testimony was newly discovered and could not have been discovered sooner through due diligence. Parker's affidavit was well known to defendant at trial, as it was introduced as evidence to impeach Parker's testimony. Defendant's claim of actual innocence is conclusory, and therefore has no arguable merit.

¶ 67                                   E. Other Claims

¶ 68 Defendant made several other claims in his postconviction petition, including: (1) his fourth amendment rights were violated, (2) Michael Powell, a fellow inmate, would have testified on defendant's behalf, and (3) phone records "may" have exonerated defendant. We agree with OSAD's observation that defendant does not explain these claims. Defendant does not

explain how his fourth amendment rights were violated, makes no mention of what Powell's testimony would have been, and does not expand on what the phone records would have revealed. "[N]onfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act." *West*, 187 Ill. 2d at 426.

¶ 69                    F. The Trial Court's First-Stage Dismissal

¶ 70            OSAD has also included in its memorandum an assessment as to whether the trial court's dismissal was procedurally proper. Defendant filed his *pro se* postconviction petition on July 10, 2020, and the court denied the petition on August 20, 2020. Therefore, the dismissal met the requirement of section 122-2.1(a)(2) (725 ILCS 5/122-2.1(a)(2) (West 2018)) of the Act, that the trial court act within 90 days if it dismisses the petition at the first stage. Further, the record reflects a detailed written order as required by section 122-2.1(a)(2) and reveals no impermissible input by the State. See *People v. Bailey*, 2017 IL 121450, ¶ 20, 102 N.E.2d 114. Any claim the trial court did not follow proper procedure in entering its first-stage dismissal order would also be without merit.

¶ 71            G. Defendant's Claims in His Response to Counsel's Motion to Withdraw

¶ 72            In his response to OSAD's motion to withdraw as appellate counsel, and in his reply to the State's brief, defendant makes several new claims of constitutional violations. Defendant claims his fifth and fourteenth amendment rights were violated, his arrest violated Bloomington police department "procedure," and his sentence was contrary to the proportionate penalties clause (see Ill. Const. 1970, art. I, § 11). None of these claims appear in defendant's postconviction petition, and therefore he cannot raise them for the first time on appeal. *People v. Jones*, 213 Ill. 2d 498, 505, 821 N.E.2d 1093, 1097 (2004).

¶ 73                    H. Ineffective Assistance of Appellate Counsel

¶ 74 Finally, in his response to OSAD's motion to withdraw as counsel on appeal, defendant asserts appellate counsel has provided ineffective assistance by not advancing his claims on appeal. "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. Childress*, 191 Ill. 2d 168, 175, 730 N.E.2d 32, 36 (2000). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

¶ 75 Here, for the reasons stated above, the record fails to disclose a single issue which is arguably meritorious. Further, defendant does not provide in his response any further legal authority or information to support his original claims. Accordingly, we reject defendant's claim of ineffective assistance of appellate counsel.

¶ 76                                    III. CONCLUSION

¶ 77 For the reasons stated, we grant OSAD's motion to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 78 Affirmed.